**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**MINDY S. ROE,**

                         **Plaintiff,**                    **1:13-cv-1065**
                                                           **(GLS)**

                 **v.**

**CAROLYN COLVIN,** Acting
Commissioner of Social Security,

                         **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Irwin M. Portnoy & Associates, PC          IRWIN M. PORTNOY, ESQ.
542 Union Avenue
New Windsor, NY 12550

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                  JEREMY A. LINDEN
United States Attorney                     Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Mindy Roe challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Roe's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On September 10, 2010, Roe filed an application for DIB under the Social Security Act ("the Act"), alleging disability since September 2, 2009. (Tr.[1] at 48, 98-101.)[2] After her application was denied, (*id.* at 49-60), Roe requested a hearing before an Administrative Law Judge (ALJ), which was held on March 15, 2012, (*id.* at 27-47, 61). On March 20, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 11-26.)

Roe commenced the present action by filing her complaint on August

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

[2] Thereafter, Roe amended her alleged onset date to October 2, 2009. (Tr. at 156.)

29, 2013 wherein she sought review of the Commissioner's determination. (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 13, 17.)

## III.  Contentions

Roe contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 13 at 12-24.) Specifically, Roe claims that the ALJ improperly: (1) evaluated her complex regional pain syndrome (CRPS), also referred to as reflex sympathetic dystrophy syndrome (RSDS), under Social Security Ruling (SSR) 03–2p; (2) discounted her credibility; and, (3) appraised the testimony of the vocational expert (VE).  (*Id.*)[3]  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence.  (Dkt. No. 17 at 3-14.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 13 at 1-11; Dkt. No. 17 at 1.)

---

[3] Roe's brief presents six points of error.  (*See generally* Dkt. No. 13.)  However, her first, second, third, and fifth points ultimately attack the ALJ's evaluation of her RSDS/CRPS and, thus, are considered together.

# V.  Standard of Review

The standard for reviewing the Commissioner's final decision under

42 U.S.C. § 405(g) is well established and will not be repeated here.  For a

full discussion of the standard and the five-step process by which the

Commissioner evaluates whether a claimant is disabled under the Act, the

court refers the parties to its previous decision in *Christiana v. Comm'r of*

*Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

Mar. 19, 2008).

## VI.  Discussion

## A.  Evaluating CRPS/RSDS

First, Roe argues that the ALJ failed to evaluate her CRPS/RSDS[4]

properly under SSR 03-02p.  (Dkt. No. 13 at 12-18.)  Specifically, Roe

argues that the ALJ failed to apply the correct standard for evaluating her

impairments under the listings.  (*Id.* at 17-18.)  According to Roe, the ALJ

was required to obtain the opinion of a medical expert before determining

that her impairment did not meet or equal a listed impairment.  (*Id.*)  In

---

[4] "These terms are synonymous and are used to describe a unique clinical syndrome that may develop following trauma.  This syndrome is characterized by complaints of intense pain and typically includes signs of autonomic dysfunction."  SSR 03-2p, 68 Fed. Reg. 59,971, 59,972 (Oct. 20, 2003).  Here, Roe injured her left hand in September 2009 and was eventually diagnosed with CRPS/RSDS.  (Tr. at 168, 212, 289-90, 295-96, 302, 321, 355, 368-69.)  The court will refer to this syndrome as CRPS for ease of reference.

addition, Roe claims that the ALJ failed to consider fully all of the symptoms of her CRPS and their impact on her ability to perform the functions of work, as well as committed several legal errors in determining her residual functional capacity (RFC).[5] (*Id.* at 12-17, 20-21.) The Commissioner counters, and the court agrees, that the ALJ adequately evaluated Roe's CRPS. (Dkt. No. 17 at 3-11.)

SSR 03-2p explains the Social Security Administration's policies for evaluating claims for disability on the basis of CRPS. *See generally* 68 Fed. Reg. 59,971. "Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment." *Id.* at 59,974. Here, in proceeding through the five-step sequential analysis, the ALJ determined at step two that Roe suffers from a severe left arm and hand impairment stemming from the combination of Roe's hand injury with questionable tendon and nerve damage, history of left hand surgery with ulnar nerve grafting to the fourth and fifth digits, and CRPS of the left upper extremity, as well as a severe cervical impairment.

---

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

(Tr. at 16.) At step three, the ALJ determined that Roe does not have an impairment or combination of impairments that meets or medically equals the severity of listing 1.02 of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 17.) The ALJ then determined that Roe has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she is precluded from the frequent use of her non-dominant left arm and hand. (*Id.* at 17-21.) At step four, the ALJ determined that Roe is unable to perform any of her past relevant work. (*Id.* at 21.) Finally, at step five, the ALJ determined, with the aid of VE testimony, that there were a significant number of jobs that Roe could perform, such as surveillance-system monitor and foot messenger, and, therefore, Roe is not disabled within the meaning of the Act. (*Id.* at 22-23.)

Turning first to step three of the sequential evaluation, if a claimant's impairment "meets or equals" the severity of a disorder listed in the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1 and "meets the duration requirement," she will be found disabled. 20 C.F.R. § 404.1520(d). SSR 03–2p does not include any express articulation requirements related to medical equivalence, but states in relevant part:

> when an individual is found to have a medically

> determinable impairment that is "severe," the
> adjudicator must next consider whether the
> individual's impairment(s) meets or equals the
> requirements of the Listing of Impairments contained
> in appendix 1, subpart P of 20 CFR part 404.  Since
> RSDS/CRPS is not a listed impairment, an individual
> with RSDS/CRPS alone cannot be found to have an
> impairment that meets the requirements of a listed
> impairment.  However, the specific findings in each
> case should be compared to any pertinent listing to
> determine whether medical equivalence may exist.

SSR 03–2p, 68 Fed. Reg. at 59,975.

The ALJ followed this ruling.  The ALJ indicated that he examined and considered all listed impairments with specific attention to listing 1.02(B).  (Tr. at 17.)  Given that Roe's CRPS impacts her left upper extremity, (*id.* at 168, 212, 289-90, 295-96, 302, 321, 355, 368-69), the ALJ appropriately considered the listings for musculoskeletal conditions set forth in listing 1.00, (*id.* at 17).  While Roe disagrees with the ALJ's finding on medical equivalence, she has not shown that her CRPS, either individually or in combination with her other impairments, medically equals listing 1.02, and she has not identified another listed impairment that warranted greater attention.  (*See generally* Dkt. Nos. 13, 20, 24.)  As the Commissioner points out, (Dkt. No. 17 at 4-5), listing 1.02(B) requires a claimant to demonstrate that she is unable to perform fine and gross

movements effectively, meaning she must suffer an "extreme loss of function of *both* upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(c) (emphasis added); *see id.* §1.02(B). As Roe's medical records, including the opinions of independent medical examiners Charles Reina and Lawrence Foster, as well as her own hearing testimony, clearly indicate that she does not suffer any loss of function in her right upper extremity, the ALJ's step two decision is supported by substantial evidence[6] and Roe's argument is without merit. (Tr. at 17, 31, 312, 355.)

Next, when determining that Roe retained the RFC to engage in light work activities that do not require the use of her left arm and hand, the ALJ relied on the opinions of Dr. Foster and treating physician Richard Dentico. (*Id.* at 21.) In May 2011, after examining Roe and reviewing her medical records, Dr. Foster opined that Roe is "capable of working strict/sedentary light duty activities utilizing the right hand only." (*Id.* at 344-57.) Subsequently, Dr. Dentico noted in his treatment records that Roe "can perform light sedentary activities." (*Id.* at 360-61.) Roe posits several errors with respect to the ALJ's RFC determination. She argues that the

---

[6] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

ALJ failed to assess all of the limitations caused by her CRPS, specifically deficits in her attention and concentration, and sensitivity and weakness in her left arm and hand, as required by SSR 03-2p.  (Dkt. No. 13 at 13-15.) Further, she argues that the ALJ erred in concluding that her symptoms, including pain, improved over time.  (*Id.* at 14-15.)  In addition, she contends that the ALJ was required to further develop the administrative record because the medical opinions upon which he relied were too vague to support his RFC determination and, further, the lack of expert medical opinion forced the ALJ to interpret raw medical data.  (*Id.* at 20-21.)

Although Roe now argues that there was no evidence before the ALJ that Roe was able to maintain the attention and concentration necessary to perform work within the stated RFC given that "[c]hronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration," SSR 03-2p, 68 Fed. Reg. at 59,974; (Dkt. No. 13 at 13-14; Dkt. No. 20 at 4), she failed to testify to any difficulties maintaining attention or concentration and did not complain to any of her treating or examining sources of such limitations, (*see generally* Tr. at 34-38).  On one occasion, in December 2010, Roe complained of "a little lethargy on her medications."  (*Id.* at 292.)  Otherwise, Roe

consistently denied any sedation or cognitive side effects of her medications. (*Id.* at 289, 297, 360-61, 364-69.) Thus, while the ALJ could have better explained his analysis of Roe's ability to maintain attention, the court is satisfied that the RFC is nonetheless supported by substantial evidence. *Cf. Sheffield v. Astrue*, No. 3:11-cv-1176, 2012 WL 5966610, at *2 (N.D.N.Y. Nov. 28, 2012) (holding that, where several medical and non-medical sources indicated that the claimant was limited in her ability to handle stress, remand was required due to the ALJ's failure to discuss why no stress limitations were included in the RFC determination). Roe also complains that the ALJ failed to "substantively evaluate the effect of" her left hand's hypersensitivity to light touch. (Dkt. No. 13 at 15.) However, the ALJ explicitly considered Roe's hypersensitivity and concluded that while Roe was precluded from the use of her upper left extremity, her pain had been adequately controlled with medication. (Tr. at 18-21.)

Roe makes several arguments with respect to the ALJ's reliance on the medical opinions of record. (Dkt. No. 13 at 15-16; Dkt. No. 20 at 5; Dkt. No. 24 at 1.) Roe contends that Dr. Foster's opinion was too vague to support the ALJ's RFC determination because it did not indicate that Roe

could perform work activities on a sustained basis,[7] and the ALJ should have sought a functional assessment from her treating physicians. (Dkt. No. 13 at 15-17.) Citing the Second Circuit's decision in *Mimms v. Heckler*, Roe argues that the ALJ was not free to assume, without evidence, that the opinions of Drs. Foster and Dentico accounted for the effects of pain on her ability to work. (Dkt. No. 24 at 1.)

First, Dr. Foster's report concludes that Roe suffers several impairments of her left hand, including CRPS, but that she retains the ability to work "strict/sedentary light duty activities utilizing the right hand only." (Tr. at 355.) Similarly, Dr. Dentico diagnosed Roe with CRPS of the left upper extremity secondary to a work related injury and opined that she was able to perform "light sedentary activities." (*Id.* at 361.) Thus, it was reasonable for the ALJ to conclude that these opinions included the impact of CRPS, including pain, on Roe's ability to work. *See* SSR 03-2p, 68 Fed. Reg. at 59,972 ("RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity."). Further, although a physician's opinion which is so vague as to prevent the ALJ to bridge the

---

[7] A claimant's physical and mental abilities must be assessed "on a regular and continuing basis." 20 C.F.R. § 404.1545(b), (c). This is defined as "[eight] hours a day, for [five] days a week, or an equivalent work schedule." SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996).

gap between a claimant's impairments and the functional limitations that flow from those impairments is useless, *see Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2), here, Dr. Foster's opinion was supported by his detailed examination and review of Roe's medical records and was also consistent with the other evidence in the record, namely Dr. Dentico's examination results and opinion. *See Kinder v. Colvin*, No. 13-CV-06368, 2014 WL 4184820, at *7 (W.D.N.Y. Aug. 21, 2014); *Armstrong v. Comm'r of Soc. Sec.*, No. 05-CV-1285, 2008 WL 2224943, at *4 n.6 (N.D.N.Y. May 27, 2008).[8] Moreover, the *Mimms* decision emphasizes that it is up to the ALJ to "evaluate the credibility of a claimant and to arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." 750 F.2d 180, 186 (2d Cir. 1984). As the only limitations advanced by Roe as having been improperly excluded from the RFC determination relate to the severity of her pain, the court does not think that the ALJ had any further obligation to supplement

_____

[8] Roe also contends that the ALJ should not have relied on Dr. Foster's opinion because he noted that, at the time of his evaluation, Roe had not yet reached maximum medical improvement. (Dkt. No. 13 at 16.) As the Commissioner points out, any further medical improvement would ostensibly improve Roe's RFC. (Dkt. No. 17 at 8.) Roe offers no explanation as to how further medical improvement would decrease her functional capabilities. Thus, this argument is unavailing.

the record by acquiring a medical source statement from one of her treating sources. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (holding that where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information).

It is clear to the court that, here, the ALJ exercised his discretion to evaluate the credibility of Roe's testimony regarding pain, presented an explicit summary of his evaluation, and rendered an independent judgment regarding the extent of Roe's subjective complaints of pain based on the objective medical and other evidence. Indeed, Roe implicitly concedes that the ALJ assessed the severity of her pain by arguing that the ALJ erred in concluding that her symptoms, including pain, improved over time. (Dkt. No. 13 at 14.) Although Roe is correct that SSR 03-2p indicates that transient clinical findings are characteristic of CRPS, the ruling also points out that the symptoms of CRPS may improve over time, and the ALJ's conclusion that Roe's symptoms improved with treatment is supported by substantial evidence. *See* SSR 03-2p, 68 Fed. Reg. at 59,974. In particular, the ALJ discussed in detail Roe's treatment notes evincing improvement in her symptoms since undergoing surgery on her left hand, and considered Dr. Dentico's notes reflecting reasonable control of Roe's

pain with medication, which improved her function and quality of life. (Tr. at 18-21, 297-98, 360-61, 364-65, 368-69.)[9]

Roe also contends that the ALJ should have sought the advice of a medical expert as to Roe's perceived cervical impairment. (Dkt. No. 13 at 20-21.) According to Roe, the ALJ found that Roe suffered a severe cervical impairment, when in fact there was no such impairment, and, instead, the injection she received in her cervical spine was to treat her CRPS. (*Id.* at 15, 20-21.) The Commissioner points out that evidence of record, including the results of a cervical spine MRI, indicate that a cervical impairment may have contributed to Roe's left upper extremity impairment. (Dkt. No. 17 at 7.) The court is mindful that, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). As Roe argues that she does not suffer any cervical impairment, and the ALJ concluded that Roe did not suffer any limitations as a result of her cervical impairment, the court can conclude that the result would have been the same, absent any possible error.

_____

[9] Roe's challenges to the ALJ's credibility determination are discussed in greater detail below. *See infra* Part VI.B.

14

**B.     Credibility Determination**

Next, Roe contends that the ALJ erred in discounting her credibility. (Dkt. No. 13 at 18-20.)  Roe argues that the ALJ failed to follow the required two-step inquiry to evaluate her subjective complaints, and failed to consider several factors that enhance her credibility, including the consistency of her complaints of pain, "the fact that she went from doctor to doctor to seek relief for her pain," the observations of Social Security Administration personnel who interviewed Roe, and her good work history. (*Id.*; Dkt. No. 20 at 3.)  The court does not agree.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 61 Fed. Reg.

34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Roe's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. at 18.)  The ALJ further explained that Roe's treatment notes and the opinions of Drs. Foster and Dentico indicate that her left arm and hand impairment improved with ongoing treatment such that, although she is precluded from using her left hand, she can engage in light work activities with the use of her right hand.  (*Id.* at 21.)  The ALJ pointed out that within a few months of her left hand surgery, Roe's severe pain and function improved, and, although she still had some hypersensitivity and loss of motion, she was

"[o]verall . . . extremely pleased" and feeling "much better." (*Id.* at 18, 198.)

The ALJ discussed in detail Roe's treatment notes, which documented her

continued complaints of pain, which her doctors prescribed various

medications to treat. (*Id.* at 288-96.) In February 2011, Dr. Dentico noted

that Roe still complained of pain that was better with use of a TENS unit

and medication and worse with physical exertion, especially of the left

upper extremity. (*Id.* at 297.) Roe reported "adequate control of her pain

on these medications with limited side effects," and an "improved quality of

life on these medications." (*Id.* at 297-98.) In March 2011, Roe reported

that her sleep had improved on medication and she felt "much better about

herself." (*Id.* at 299.) Thereafter, Dr. Dentico's notes reveal that Roe's

medications improved her function and quality of life, although at times she

had breakthrough pain, and when her medications were decreased, her

pain increased. (*Id.* at 302, 360, 363-365, 367.) Dr. Dentico's most recent

treatment notes of record reflect that, overall, her medications controlled

her pain and "improve[d] her function and quality of life," although she was

still "limited regarding her left upper extremity." (*Id.* at 368.) Further, Roe

ran out of one of her medications a week prior to Dr. Dentico's most recent

examination and her pain had "flared somewhat[,] but, overall, [she was]

still doing well."  (*Id.*)

Roe is correct that the first step of the credibility analysis requires the ALJ to determine whether the claimant has medically determinable impairments that could reasonably be expected to produce the symptoms alleged.  (Dkt. No. 13 at 19); *see* 20 C.F.R. § 404.1529(a)(b).  However, contrary to Roe's claim, the ALJ explicitly found that while Roe's contentions are consistent with CRPS, her statements regarding the intensity and persistence that she identifies are not fully credible.  (Dkt. No. 20 at 3; Tr. at 18.)  Further, an ALJ is not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  Although Roe points to evidence that she continued to suffer pain in her left arm and hand, there is substantial evidence supporting the ALJ's determination that Roe can perform light work[10] with her right, dominant hand.  (Tr. at 21); *see Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013) ("[W]hether there is substantial evidence supporting the

---

[10] Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds.  *See* 20 C.F.R. § 404.1567(b).  Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (1983).

[claimant]'s view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*"). In this case, it is clear that the ALJ considered Roe's complaints of pain, as well as her work history, and determined that, although she was limited, Roe's pain was not so severe as to be disabling.[11] (Tr. at 21.) This conclusion was not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)).

## C.   VE Testimony

Finally, Roe argues that the ALJ erred in relying on the testimony of the VE. (Dkt. No. 13 at 21-24.) Specifically, Roe claims that the hypothetical question posed to the VE was incomplete due to errors in the ALJ's RFC and credibility determinations. (*Id.* at 21-22.) In addition, Roe contends that the ALJ "failed to identify the 'national or local New York economy' in a sufficient way for a reviewing [c]ourt to understand both the

---

[11] The ALJ's decision discussed in detail Roe's treatment notes, including her complaints of pain, as well as acknowledged that Roe continued to work for one month after she sustained her left hand injury. (Tr. at 18-21.)

question and answer." (*Id.* at 22.)  Again, the court disagrees.

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *White v. Sec'y of Health & Human Servs*., 910 F.2d 64, 65 (2d Cir. 1990).  To make such a determination, an ALJ may rely on the Medical–Vocational Guidelines, referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines.  *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009).  However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).  In that case, the ALJ should consult with a VE before making a determination as to disability.  *See id.*

Here, the ALJ relied on the testimony of a VE to determine that Roe

is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (Tr. at 22-23.)  The VE testified that a hypothetical claimant with Roe's functional limitations and capabilities could perform the jobs of foot messenger and surveillance-system monitor, and provided numbers of positions that exist in the "national" and "local" economy for those jobs.  (*Id.* at 39-40.)  According to the VE, there are 10,000 foot messenger jobs in the national economy, and 230 in Roe's local economy, and 34,000 surveillance-system monitors in the nation, and 400 in Roe's local economy.  (*Id.* at 40.)

First, as discussed above, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence.  Turning to the ALJ's failure "to identify the national or local New York economy", Roe has not pointed to any applicable regulation or decision of the Second Circuit which obligates the ALJ to do so.  (Dkt. No. 13 at 22).  Under the regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country."  20 C.F.R. § 404.1566(a).  This definition assures that individuals are not denied benefits on the basis of "[i]solated jobs that exist only in very limited numbers in relatively few

locations outside of the region where [the claimant] live[s]." *Id.*

§ 404.1566(b).  Assuming, arguendo, that the VE was not sufficiently

familiar with the local New York economy, (Dkt. No. 13 at 24), it is of little

consequence because the regulations require only that the Commissioner

prove a significant number of jobs exist in the national economy that the

claimant is capable of performing.  *See* 20 C.F.R. § 404.1566(a)

(explaining that "[i]t does not matter whether" work exists in the immediate

area in which a claimant lives).  "Courts have generally held that what

constitutes a 'significant' number is fairly minimal."  *Fox v. Comm'r of Soc.*

*Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)

(collecting cases).  Here, the VE's testimony that there are 44,000 jobs in

the national economy and 630 jobs in the local economy that Roe is

capable of performing satisfies this low threshold.  *See McCusker v.*

*Comm'r of Soc. Sec.*, No. 1:13-cv-1074, 2014 WL 6610025, at *3 (N.D.N.Y.

Nov. 20, 2014) ("[T]he VE's testimony that there are 74,470 jobs in the

nation, 2,250 jobs in New York State, and, more specifically, 100 jobs in

the Capital District, is sufficient to establish that work exists in the national

economy which [the claimant] can perform, and the Commissioner has met

her burden at step five."); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL

4146880, at *6 (W.D.N.Y Aug. 19, 2014) ("[I]t cannot be said that totals of over 16,000 jobs nationally and 60 regionally (the numbers identified by the ALJ for the surveillance system monitor position in this case) are not 'significant' as a matter of law.").

Lastly, Roe argues that there were conflicts between the testimony of the VE and the Dictionary of Occupational Titles (DOT), which the ALJ was required to resolve. (Dkt. No. 13 at 23-24); *see* SSR 00-4p, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000) (explaining that the occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT). However, Roe does not provide any explanation as to how the functional limitations contained in the ALJ's RFC determination would preclude her from performing the work of a foot messenger or surveillance-system monitor as described in the DOT, contrary to the VE's testimony. (Dkt. No. 13 at 23-24;); *see Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) ("[E]xpert [testimony] and the [DOT] conflict where they disagree[ ] in categorizing or describing the requirements of a job as it is performed in the national economy."). Roe notes that the DOT classifies a surveillance-system monitor as in the government services industry and requiring a reasoning level three,

meaning that the person must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, [and d]eal with problems involving several concrete variables in or from standardized situations."  Dictionary of Occupational Titles, Code 379.367–010, 1991 WL 673244 (4th ed., 1991).  However, the hypothetical posed to the VE did not preclude Roe from performing the demands of unskilled work,[12] nor from working in government services.  (Tr. at 39.) Accordingly, the court finds that the job of surveillance-system monitor as identified by the VE is not incompatible with the limitations established by the ALJ.  Moreover, even if there was such a conflict with respect to the job of surveillance-system monitor, the finding of one job is sufficient to demonstrate that there is other work that she could perform.  *See* 20 C.F.R. § 404.1566(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008).  Thus, the ALJ properly relied on the testimony of the VE and Roe's arguments to the contrary are meritless.

## D.     Remaining Findings and Conclusions

---

[12] As described by the VE, a surveillance-system monitor is an unskilled position with a specific vocational preparation level two.  (Tr. at 40); Dictionary of Occupational Titles, Code 379.367–010, 1991 WL 673244.

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Roe's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 19, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court